# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

KRIS PAPPENFUSS,

            Plaintiff,

v.                                                         Case No. 13-CV-175

RECEIVABLE MANAGEMENT SERVICES CORPORATION,

            Defendant.

## ORDER ON THE PLAINTIFF'S MOTION FOR COSTS AND ATTORNEYS' FEES

### I. Facts and Procedural History

This Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., case comes down to, like so many FDCPA cases, the question of attorneys' fees. This is because an individual plaintiff is often unable to establish actual damages so the plaintiff's recovery falls under the category of statutory damages which are capped at $1,000.00. 15 U.S.C. § 1692k(a)(2)(A). Because that relatively modest sum would probably not merit an aggrieved individual paying an attorney to pursue such an action, nor an attorney accepting the case on a contingency fee basis, Congress included 15 U.S.C. § 1692k(a)(3), which mandates the court to award to a prevailing plaintiff "reasonable attorney's fees as determined by the court." Schlacher v. Law Offices of Phillip J. Rotche & Assocs., P.C., 574 F.3d 852, 856 (7th Cir. 2009); Mace v. Van Ru Credit Corp., 109 F.3d 338 (7th Cir. 1997); Tolentino v. Friedman, 46 F.3d 645, 652 (7th Cir. 1995). The prospect of attorneys' fees and the volume of alleged violations of the

FDCPA has resulted in the development of a cottage industry for both plaintiffs and defense attorneys specializing in these sorts of actions and a proliferation of FDCPA litigation in courts. The current trend in these cases, at least in this court, appears to be an effort by the defendant to quickly settle the case in order to limit the potential for attorneys' fees. While in the majority of cases being settled the parties are able to agree on the amount of attorneys' fees, occasionally, like here, the court is called upon to resolve a dispute.

The complaint was filed on February 19, 2013, (Docket No. 1), and on July 16, 2013, before the court even held an initial scheduling conference, the plaintiff accepted the defendant's offer of judgment, (Docket No. 12). Judgment was entered the following day awarding the plaintiff $750.00, leaving only the question of the "reasonable costs and attorneys' fees," (Docket No. 12-2, ¶1), to which the plaintiff may be entitled.

The plaintiff filed her motion for attorneys' fees and costs on July 30, 2013, seeking fees in the amount of $3,182.50 for 12.4 hours of work, plus costs of $350.00. (Docket No. 14.) The defendant responded, contending that both the time claimed and the hourly rate were excessive. (Docket No. 15.) The plaintiff has replied, now seeking an additional $180.00 for 0.6 hours spent on the reply. (Docket No. 17.) The pleadings on this motion are closed and the matter is ready for resolution.

## II. The Lodestar

Reasonable attorneys' fees under the FDCPA are calculated using the same methodology employed for calculating fees under 42 U.S.C. § 1988. Zagorski v. Midwest Billing Servs., 128 F.3d 1164, 1166 (7th Cir. 1997) (per curiam). "Although there is no precise formula for determining a reasonable fee, the district court generally begins by calculating the lodestar—the attorney's reasonable hourly rate multiplied by the number of hours reasonably expended."

Schlacher, 574 F.3d at 856 (citing Hensley v. Eckerhart, 461 U.S. 424, 433-37, (1983); Gautreaux v. Chi. Hous. Auth., 491 F.3d 649, 659 (7th Cir. 2007). The court may then adjust the lodestar, taking into consideration various factors such as the complexity of the case, the plaintiff's degree of success, and the public interest advanced in the case. Id. at 856-57 (citing Connolly v. Nat'l Sch. Bus Serv., Inc., 177 F.3d 593, 597 (7th Cir. 1999); Strange v. Monogram Credit Card Bank of Ga., 129 F.3d 943, 946 (7th Cir. 1997)). Although the methodology is inexact, the court cannot arbitrarily award fees based upon a gut reaction; the court must provide a clear and concise explanation for its award. Id. at 857 (citing Small v. Richard Wolf Med. Instruments Corp., 264 F.3d 702, 708 (7th Cir. 2001); In re Cont'l Ill. Sec. Litig., 962 F.2d 566, 570 (7th Cir. 1992)).

### A. Reasonable Hourly Rate

The court begins its analysis with a calculation of a reasonable hourly rate. A reasonable hourly is "one that is 'derived from the market rate for the services rendered.'" Pickett v. Sheridan Health Care Ctr., 664 F.3d 632, 640 (7th Cir. 2011) (quoting Denius v. Dunlap, 330 F.3d 919, 930 (7th Cir. 2003)). The fee applicant bears the initial burden of "produc[ing] satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community." Id. (quoting Blum v. Stenson, 465 U.S. 886, 895 n.11 (1984)) (brackets in original). "If the fee applicant satisfies this burden, the burden shifts to the other party to offer evidence that sets forth 'a good reason why a lower rate is essential.'" Id. (quoting People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1313 (7th Cir. 1996)).

But looking to "market" rates is not especially helpful in the sorts of cases, like FDCPA cases, for which there is no true market because there are no fee paying clients. In simplistic terms, a market is effective only because purchasers generally have the incentive to seek out the

3

greatest value. Thus, sellers strive to keep prices low and commensurate with quality lest a competitor should offer a better service at lower price. However, when an FDCPA plaintiff is seeking an attorney, price is irrelevant because under no circumstances will she be paying her attorneys' hourly rate.

Therefore, to determine what is an appropriate "market" rate for work in a case such as one arising under the FDCPA for which there are no fee paying clients, it is helpful for a court to look beyond strictly FDCPA cases to other types of cases that might require similar sorts of knowledge and expertise and for which there is a more effective market. Spegon v. Catholic Bishop, 175 F.3d 544, 555 (7th Cir. 1999); cf. Pickett, 664 F.3d at 640. The Court of Appeals for the Seventh Circuit has "indicated a preference for third party affidavits that attest to the billing rates of comparable attorneys" as the means by which to determine an appropriate market rate. Pickett, 664 F.3d at 640. However, neither the plaintiff nor the defendant have offered such evidence to the court. Not only has neither party offered an affidavit indicating the billable hour rate an attorney charges clients in a consumer protection or similar actions, but neither party has provided the court with an affidavit from an attorney familiar with the Milwaukee legal market indicating what is a prevailing hourly rate in the area. The parties' arguments generally rely upon fee awards in other FDCPA cases around the country, evidence the court regards as not necessarily predictive of actual market rates for comparable work in the Milwaukee area.

4

Case 2:13-cv-00175-AEG   Filed 09/26/13   Page 4 of 14   Document 18

The plaintiff seeks compensation for the work of four attorneys and two paralegals as set forth below:

| Person | Title | Hourly Rate Sought | Usual Hourly Rate | Hours | Education / Experience |
|---|---|---|---|---|---|
| Craig Thor Kimmel | Partner Attorney | $400.00 | $425.00 | 0.40 | Practicing since 1989; litigated "thousands" of consumer claims. |
| Tara L. Patterson | Senior Associate Attorney | $300.00 | $300.00 | 7.8 | Practicing since 2001; with firm since 2009; litigated "countless" consumer cases; previously with Governor's Office of General Counsel. |
| Joseph L. Gentilcore | Associate Attorney | $200.00 | $225.00 | 1.5 | Practicing since 2011; began with firm as law clerk. |
| Suzanne Pontious | Associate Attorney | $200.00 | $225.00 | 2.00 | Practicing and with firm since 2013. |
| Jason Ryan | Paralegal | $125.00 / $120.00 | $155.00 | 0.20 | Associates Degree; 10 years with firm. |
| Katelynn Fitti | Paralegal | $125.00 / $120.00 | $165.00 | 1.10 | Associates Degree; with firm from Dec. 2011 – July 2013. Paralegal at 2 other firms previously. |

As a preliminary matter, the court notes a discrepancy in the plaintiff's filings with respect to the hourly rate of the firm's paralegals. In the spreadsheet outlining the time spent on this matter, (Docket No. 14-2), and plaintiff's brief, (Docket No. 14-2), the plaintiff asks that the work of the firm's paralegals be compensated at the rate of $125.00 per hour. However, Craig Thor Kimmel states in his affidavit that $120.00 is what he believes is "comparable to the rate charged by other paralegals of similar training, skill and expertise." (Docket No. 14-3, ¶¶24-25.) In any event, an attorney's averment that he believes a rate is reasonable is of little value to the court. Kaylor-Trent v. John C. Bonewicz, P.C., 916 F. Supp. 2d 878, 885 (C.D. Ill. 2013) (citing

Elusta v. City of Chicago, 760 F.Supp.2d 792, 798 (N.D. Ill. 2010); Soleau v. Illinois Dept. of Transp., 2011 WL 2415008, at 3 (N.D. Ill. 2011)).

Turning to the calculation of the lodestar, because calculation of the lodestar is a matter of court discretion, there is naturally much variation among cases. While the decisions of other courts are certainly helpful in guiding this court's analysis, the court is not bound to accept any such conclusion. Like with many matters involving court discretion, two courts might reach very different results and neither is necessarily incorrect.

The plaintiff contends that the hourly rate sought is reasonable because, in 2010, in an FDCPA case resolved by default judgment (and thus there was no opposing party objecting to the proposed fees), another judge in this district approved rates of $394.00 per hour for partners, $290.00 per hour for an associate, and $125.00 for paralegals and law clerks. (Docket No. 14-1 at 4 (citing Suleski v. Bryant Lafayette & Assocs., 2010 U.S. Dist. LEXIS 55353 (E.D. Wis. May 10, 2010)). Then in reply, the plaintiff points to a number of cases, generally out of the Eastern District of Pennsylvania where the plaintiff's law firm is located, where courts have approved the hourly rates sought by the plaintiff's law firm. (Docket No. 17 at 4-5.)

The defendant points to Kaylor-Trent v. John C. Bonewicz, P.C., 916 F. Supp. 2d 878 (C.D. Ill. 2013), a decision it incorrectly identifies as a decision of the Court of Appeals for the Seventh Circuit, (Docket No. 15 at 9), to contend that an hourly rate of $125.00 for associates and $155.00 for partners is appropriate. In Kaylor-Trent, plaintiff's counsel sought $33,110.00 for 110.5 hours expended in an FDCPA that proceeded through a brief court trial limited to the question of damages. Kaylor-Trent, 916 F. Supp. 2d at 881. The court looked to its own knowledge of local billing practices, as well as the general Criminal Justice Act hourly rate, to conclude that "the appropriate rate for consumer protection litigation associate attorneys

6

(attorneys with eight years or less of experience) is $125 and for partners (attorneys with more than eight years of experience) is $155." Id. at 885. The court further disallowed any award for clerical, ministerial, or secretarial tasks, excluded certain entries as excessive or unnecessary, and refused to compensate time spent by counsel traveling to the courthouse or for any attorney who was not admitted to practice in the district. Id. at 885-89. Thus, the court calculated to lodestar to be $9,700.00. Id. at 889.

The law firm representing the plaintiff in the present action, Kimmel & Silverman, P.C., frequently appears on behalf of plaintiffs in FDCPA actions across the country, including many actions against this same defendant. The Southern District of New York has been a particular wellspring for such actions, leading to a number of recent decisions there explicitly addressing the reasonableness of the fees charged by the firm's various attorneys. See Dickey v. Allied Interstate, Inc., 2013 U.S. Dist. LEXIS 116713, 3-4 (S.D.N.Y. Aug. 1, 2013) (citing Goser v. Allied Interstate, LLC, 12 Civ. 9374 (MGC), 2013 U.S. Dist. LEXIS 71097, 2013 WL 2181760 (S.D.N.Y. May 17, 2013); Barile v. Allied Interstate, Inc., 12 Civ. 916 (LAP) (DF), 2013 U.S. Dist. LEXIS 32483, 2013 WL 795649 (S.D.N.Y. Jan. 30, 2013), adopted, 2013 U.S. Dist. LEXIS 30224, 2013 WL 829189 (S.D.N.Y. Mar. 4, 2013); Muise v. Allied Interstate, Inc., 12 Civ. 1317 (TPG), 2012 U.S. Dist. LEXIS 130993, 2012 WL 4044699 (S.D.N.Y. Sept. 12, 2012); Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628 (S.D.N.Y. 2012). In Dickey, the plaintiff sought, and the court found reasonable, hourly rates as follows:

> $300 per hour for partner Craig Thor Kimmel, $225 per hour for senior attorneys Amy L. Bennecoff and Tara Patterson, $200 per hour for associate Christopher J. Kelleher, $125 per hour for law clerk Caroline Diehl, $100 per hour for paralegal Jason Ryan, and $80 per hour for paralegal Pete Keltz.

Id. at 4. These hourly rates arose from the thorough analysis of Magistrate Judge Debra Freeman, in Barile v. Allied Interstate, Inc., 2013 U.S. Dist. LEXIS 32483 (S.D.N.Y. Jan. 30, 2013).

However, notably, another judge in the Southern District of New York, in an FDCPA case that settled quickly after filing and required only 10.4 hours of work, awarded Kimmel only $200.00 an hour, a senior associate $150.00 an hour, a junior associate $100.00 an hour, and paralegals $50.00 per hour, finding that "[t]hese rates are more than adequate to ensure that firms like Kimmel and Silverman, P.C., will continue to bring meritorious FDCPA cases." Muise v. Allied Interstate, Inc., 2012 U.S. Dist. LEXIS 130993, 2-3 (S.D.N.Y. Sept. 12, 2012).

In the view of this court, an FDCPA case such as this is not complicated; it should take little time, be resolved largely through forms and existing boilerplate, and require very little experience. In the rare instance that an FDCPA case would proceed all the way through trial, the entire litigation process, including trial, would likely be uncomplicated and straightforward, akin to a traffic citation or a criminal misdemeanor.

As such, compensation rates for attorneys appointed in cases under the Criminal Justice Act ("CJA") might be a relevant guidepost, as noted by Judge Myerscough in Kaylor-Trent. But CJA attorneys do not have to include certain overhead, such as advertising, in their hourly rates, and CJA rates, which have actually been recently cut to $110.00 per hour due to Congress' failure to adequately fund the courts, are not truly "market" rates. Nonetheless, federal criminal prosecutions are frequently complicated and there are a number of attorneys, including some of this area's best and most-experienced criminal defense attorneys, who devote a significant portion of their practices to CJA cases. But because CJA rates are not truly "market" rates, even in area of criminal defense, the court does not regard it as appropriate to base its fee award in this case upon those rates.

While CJA rates are too low to apply here, the court finds the rates sought by the plaintiff to be too high. As noted above, FDCPA litigation is not complicated; nor does it require a high

degree of specialization, skill, or expertise. As such, an attorney in an FDCPA case might be expected to earn somewhere within the middle to lower range of what comparably experienced attorneys in a community might earn.

The court has not identified any especially recent information for average rates in Wisconsin, but a 2008 report of the State Bar of Wisconsin indicated that mean hourly billing rates in Wisconsin ranged from $144.00 per hour for brand new associates to $198.00 per hour for associates with ten or more years of experience. State Bar of Wisconsin, 2008 Survey Report: Economic of Law Practice in Wisconsin, p. 39. Hourly rates for legal assistants ranged from $77.00 to $89.00 per hour. Id. Accepting that inflation has resulted in a modest increase in average attorneys' fees in the roughly five years since the State Bar's study, it might be reasonable to conclude that hourly rates for associate attorneys would be in the neighborhood of about $160.00 to $225.00 today. This range places the fees generally within the range found appropriate for many of these very same attorneys in the Southern District of New York. Barile, 2013 U.S. Dist. LEXIS 32483.

Of course, it might be reasonable to assume that market rates in Milwaukee would be significantly lower than those in Manhattan, or even the suburbs of Philadelphia where the plaintiff's law firm is based. Nonetheless, the court concludes that hourly rates of roughly the average hourly rate for Wisconsin, and thus towards the high end of what the court would consider appropriate in a straightforward FDCPA case, are appropriate in this case given the attorneys' expertise and experience in this field. Although FDCPA cases are not complicated, the expectation that an experienced attorney will be able to call upon pre-established form language and prior research to complete tasks quicker than an FDCPA neophyte justifies the higher hourly rate. Thus, the court concludes hourly rates generally in line with those found reasonable by the

Southern District of New York are appropriate in this case, and therefore sets hourly rates in this matter, based upon each individual's training and experience, as follows:

> Craig Thor Kimmel: $300.00
> Tara L. Patterson: $225.00
> Joseph L. Gentilcore: $200.00
> Suzanne Pontious: $175.00
> Jason Ryan: $100.00
> Katelynn Fitti: $85.00

**B. Hours Reasonably Expended**

In determining the hours reasonably expended in a case such as this, this court looks to the time records submitted by the plaintiff's attorneys. (Docket No. 14-2.) Counsel seek compensation for a total of 13.00 hours expended in this case, which, on its face, is not necessarily an unreasonable sum for a straightforward FDCPA case that settled before the need for any discovery. Cf. Schlacher, 574 F.3d at 858. Nonetheless, the defendant criticizes the fees sought by the plaintiff on the grounds that plaintiff's counsel are seeking to recover for duplicative work and for administrative tasks, including administrative tasks performed by attorneys. (Docket No. 15 at 10-13.) However, the defendant generally challenges the charges in broad strokes rather than highlighting specific charges it regards as unreasonable, thus complicating this court's task.

Plaintiff's counsel has already appropriately pared back its billable time to generally exclude certain tasks such as emails to colleagues or review of automated emails from the court confirming the electronic filing of a document. But there are nonetheless a few charges that appear unreasonable. For example, there is a charge 0.20 hours for the firm's partner to review the complaint drafted by a senior associate. (Docket No. 14-2 at 1.) A senior associate, especially one who claims to have litigated "countless" FDCPA cases, should be entirely competent to draft

10

a complaint in a routine FDCPA case like this without the supervision of a partner. Thus, the court shall exclude the 0.2 of an hour sought by Craig Thor Kimmel for reviewing the complaint.

The court also finds it unreasonable that an attorney, whose hourly rate is purportedly $200.00, should spend any time doing the mundane and administrative task of generating a fee bill. (Docket No. 14-2 at 8.) This task, which by all indications involves merely generating an automated report from the firm's timekeeping software, should be easily accomplished by a paralegal in one-tenth of an hour and at a rate of $100.00 per hour. Thus, the court shall adjust the hourly charges accordingly

The court also notes the striking percentage of billing entries for one-tenth of an hour. Here, fully 75% of all entries are for one-tenth of an hour. While attorneys and other professionals who bill by the hour will routinely use a tenth of an hour as the smallest billing increment, the court is mindful that an excessive number of very small entries might be indicative of billing impropriety. If a professional breaks up six one-minute tasks into six separate entries, each of which is billed as one-tenth of an hour, the professional charges for 36 minutes of work when actually spending only six minutes doing anything. Do this enough and a professional can bill more than a week's worth of work in just one eight-hour day. The court has thoroughly reviewed counsel's billing records and, although there are instances where multiple tenth-of-an-hour entries appear on the same day, these generally appear to be legitimately for distinct tasks, such as reviewing and responding to separate emails from opposing counsel. (Docket No. 14-2 at 5-8.)

However, one instance is worth noting. On April 19, 2013, defense counsel filed his notice of appearance, (Docket No. 5), the defendant's answer to the complaint, (Docket No. 6), and the defendant's disclosure statement, (Docket No. 7). Attorney Peterson states she spent a

11

tenth of an hour reviewing the disclosure statement and another tenth of an hour reviewing the answer. (Docket No. 14-2 at 3.) As an initial matter, there is reason to question why plaintiff's counsel would need to review the defendant's disclosure statement at all; plaintiff's counsel was quite familiar with the defendant, having brought suit against it many times before. But the bigger question for the court is why these tasks were split into two separate entries. One explanation is that this was necessary because the documents were filed some time apart. Initially, this explanation would appear plausible. According to the ECF receipt, the answer was filed at 11:58 AM CDT, (Docket No. 6), and the disclosure statement was filed at 1:21 PM CDT, (Docket No. 7). Although counsel's records do not indicate the time of day any task was performed, Attorney Patterson indicates she reviewed the later-filed disclosure statement before the answer, (Docket No. 14-2 at 3), and thus the answer was necessarily filed by the time she reviewed the disclosure statement. The court finds that counsel reasonably should have combined her review of these documents, both of which should have required a total of no more than six minutes to review.

The court finds other billed hours, including the total of 2.6 hours spend drafting and revising the fee petition and 0.6 hours spend replying to the defendant's response, (Docket No. 17 at 10), as well as the numerous entries related to settlement discussions between the parties, to be reasonable and therefore compensable under 15 U.S.C. § 1692k(a)(3). Therefore, the court finds the following hourly rates and time expenditures are reasonable and appropriate:

12
Case 2:13-cv-00175-AEG   Filed 09/26/13   Page 12 of 14   Document 18

| Individual | Reasonable Hourly Rate | Reasonable Hours | Total Fee |
|---|---|---|---|
| Craig Thor Kimmel | $300.00 | 0.2 | $60.00 |
| Tara L. Patterson | $225.00 | 7.7 | $1,732.50 |
| Joseph L. Gentilcore | $200.00 | 1.3 | $260.00 |
| Suzanne Pontious | $175.00 | 2.0 | $350.00 |
| Jason Ryan | $100.00 | 0.3 | $30.00 |
| Katelynn Fitti | $85.00 | 1.1 | $93.50 |
|  | TOTAL: | 12.6 | $2,526.00 |

### III. Adjustment of the Lodestar

Having concluded that the lodestar in this action is $2,526.00 based upon a total of 12.6 hours, the court must now consider whether this amount should be adjusted based upon "various factors including the complexity of the legal issues involved, the degree of success obtained, and the public interest advanced by the litigation." Schlacher, 574 F.3d at 856-57 (citing Connolly v. Nat'l Sch. Bus Serv., Inc., 177 F.3d 593, 597 (7th Cir. 1999); Strange v. Monogram Credit Card Bank of Ga., 129 F.3d 943, 946 (7th Cir.1997)). The defendant does not argue for any adjustment of the lodestar, but the court is nonetheless required to independently assess the question.

The legal issues involved were not complex. But that lack of complexity was accounted for in the court's determination of the reasonable hourly rate and therefore no further reduction here is appropriate.

As for the degree of success, the plaintiff recovered $750.00 of a maximum $1,000.00 recovery. Thus, arguably, plaintiff's counsel was only 75% successful. However, viewing success in this manner is too narrow and it would be error to mechanically adjust the lodestar in such as manner. Schlacher, 574 F.3d at 857 (citing Eddleman v. Switchcraft, Inc., 927 F.2d 316, 318 (7th Cir. 1991); Deicher v. City of Evansville, 545 F.3d 537, 546 (7th Cir. 2008)). A plaintiff without the egregious sort of claim that might readily merit the statutory maximum in damages,

is nonetheless entirely successful when she receives all to which her claim entitles her. Moreover, holding that plaintiff's counsel must obtain the statutory maximum of recovery in order to be fully compensated for his time might have the counter-productive effect of dissuading settlement. Thus, the court concludes that, based upon the allegations in the complaint, the plaintiff obtained all she could reasonably be expected to receive, and therefore it is not appropriate to adjust the lodestar based upon the degree of success obtained.

Finally, this was not a case that, in the micro scale, advanced any particular strong public interest. But on the macro scale, lawsuits by private individuals are the primary means by which Congress' effort to protect debtors from the deceptive and harassing tactics condemned by the FDCPA. Thus, in consideration of the public interest advanced, the court does not regard any adjustment of the lodestar is appropriate.

## IV. Conclusion

For the reasons set forth above, the court concludes that the plaintiff's counsel reasonably spent 12.6 hours on this matter and therefore are entitled to reasonable fees in the amount of $2,526.00. The defendant does not object to the plaintiff's request for costs of $350.00. Therefore, in accordance with 15 U.S.C. § 1692k(a)(3), 28 U.S.C. § 1920(1), Fed. R. Civ. P. 54(d)(2), and Civil L.R. 54, the defendant shall pay to the plaintiff the amount of $2,876.00 in costs and attorneys' fees.

**IT IS THEREFORE ORDERED** that the plaintiff's motion for costs and attorneys' fees, (Docket No. 14), is **granted** in the amount of **$2,876.00**.

Dated at Milwaukee, Wisconsin this 26th day of September, 2013.

AARON E. GOODSTEIN
U.S. Magistrate Judge